**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | No. 15-360 |
| MARK COOPER : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                          **April 5, 2016**

On August 4, 2015, Mark Cooper was charged with one count of conspiracy to produce and traffic in counterfeit access devices, in violation of 18 U.S.C. §§ 371 and 1029(a)(1), and one count of possession of access device-making equipment, and aiding and abetting thereof, in violation of 18 U.S.C. § 1029(a)(4) and 18 U.S.C. § 2. Specifically, he is charged with producing counterfeit Southeastern Pennsylvania Transportation Authority ("SEPTA") monthly TransPasses and possessing counterfeit-making equipment. Cooper has filed a Motion to Dismiss the Indictment for failure to charge an offense, claiming that SEPTA monthly TransPasses do not meet the definition of "access devices" under 18 U.S.C. § 1029, because they "do not access credit accounts." (Def's Mem. at 1.) The Court disagrees and will deny the Motion.

**I.     FACTUAL BACKGROUND**

SEPTA provides rail, subway, trolley and bus services to passengers in Philadelphia and its suburbs. (Indictment, Count One ¶ 1.) For $91.00, a SEPTA monthly TransPass provides unlimited travel on the subway, trolley, and bus lines. (*Id.* ¶ 2.) Each TransPass contains a unique electronic serial number. (*Id.* ¶ 2.) SEPTA tracks the usage of each TransPass, and may revoke or "blacklist" passes for fraudulent activity. (Gov't Mem. 3.)

According to the Indictment, Cooper and Kimberly Adams operated a counterfeiting scheme in which Cooper produced, and Adams sold, counterfeit SEPTA TransPasses. (Indictment, Count One ¶ 5.) At the end of each month, Cooper purchased one legitimate SEPTA TransPass (*Id.* ¶ 6.) He used a machine called an MSR605 HiCo Magnetic Card Reader Writer Encoder to make counterfeit copies of the legitimate TransPass. (*Id.* ¶ 8; *Id.* Overt Acts ¶ 41.) Between October 2014 and May 2015, Cooper manufactured, and Adams sold, approximately 250 counterfeit TransPasses per month for $50.00 each. (*Id.* Overt Acts ¶¶ 2-41.)

## II.     STANDARD OF REVIEW

Federal Rule of Criminal Procedure 7(c)(1) states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Third Circuit has held that: "[A]n indictment [is] sufficient so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (internal quotation marks omitted).

Accordingly, the Court must find that the indictment "fails to state an offense if the specific facts alleged in the [indictment] fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002). The Court must "accept[] as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). Likewise, the Court may not address the sufficiency of the Government's evidence in deciding a motion to dismiss. *United States v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir. 2000).

**III.    DISCUSSION**

For the purposes of this motion, Cooper does not dispute that he produced counterfeit SEPTA TransPasses for unlimited monthly travel, or that he possessed equipment for manufacturing these passes.  (Def.'s Mot. ¶¶ 1-6.) Rather, he argues that the Indictment nonetheless fails to charge a legally cognizable offense, because monthly TransPasses are not "access devices" under 18 U.S.C. § 1029, the federal statute that governs "fraud and related activity in connection with access devices." (Def.'s Mem. at 1.) Cooper contends that the statute applies only to devices that provide "access [to] credit accounts," such as credit cards. Therefore, he argues, it does not apply to passes that provide unlimited monthly travel services, which do not draw from credit accounts. (*Id.*)

The Court denies the motion, and holds that the transit passes at issue are "access devices" under 18 U.S.C. § 1029 for two reasons. First, monthly transit passes meet the definition of "access devices" under the plain meaning of the statute, because they provide access to services. Second, the statute does not impose any requirement that the device in question provide access to a discrete account. Even if it did, however, the electronic serial number on the pass constitutes an account and therefore satisfies any "account access" requirement.

**A.    TransPasses Are Access Devices Under the Plain Meaning of the Statute**

The Court looks first at the plain meaning of the statute. Title 18 U.S.C. § 1029(e)(1) defines access devices as "any card, plate, code, account number, electronic serial number . . . or other means of account access that can be used . . . to obtain money, goods, services, or any other thing of value." Here, according to the Indictment, Cooper's counterfeit TransPasses were cards containing electronic serial numbers that were used to obtain transportation services on SEPTA's

subways, buses and trolleys. Therefore, monthly transit passes are access devices under the plain meaning of the statute, and Cooper is properly charged with access device fraud.

### B. There Is No Special Account Access Requirement

Although TransPasses qualify as "access devices" under the plain meaning of Section 1029(e)(1), Cooper notes that other circuits have applied a narrower definition of the term. In particular, the Tenth Circuit has held that an object is not an "access device" unless it provides access to an account, such as a consumer credit card account. *United States v. Brady*, 13 F.3d 334 (10th Cir. 1993); *United States v. McNutt*, 908 F.2d 561 (10th Cir. 1990). Cooper argues that monthly TransPasses fail to provide access to any identifiable customer account, and therefore fall outside the scope of the statute.

The question of "whether or not an 'access device' must provide access to an account is an issue of first impression in the Third Circuit." (Gov't Mem. 16.) Citing legislative history, however, the Third Circuit has previously indicated that it does not favor a restrictive definition of access device: "Congress intended the definition of 'access device' to be broad enough to encompass technological changes, and such term should be construed broadly to encompass innovative schemes perpetrated by criminals who use unauthorized information to defraud." *United States v. Komolafe*, 246 F. App'x 806, 811 (3d Cir. 2007). Consistent with these directions, a court in this District has held that "the term 'access device' is used to define any item which permits access into commerce and the marketplace." *United States v. Jones*, 557 F. Supp. 2d 630, 637 (E.D. Pa. 2008). Indeed, imposing an account access requirement seems to contradict this approach, as well as the plain meaning of the statute and cases in other circuits. *See, e.g.*, *United States v. Ashe*, 47 F.3d 770, 774 (6th Cir. 1995) (holding that the "invasion of an identifiable customer's account is not a necessary element of proof" under 10 U.S.C. § 1029).

Therefore, the Court holds that there is no special "account access" requirement under the statute.

Even if the statute required "account access," however, the TransPass would satisfy that requirement. The Ninth Circuit and the Tenth Circuit have both stated that Section 1029 imposes an "account access" requirement. This Court would adopt the definitions of "account" and "account access" employed by the Ninth Circuit, rather than the more restrictive definitions propounded by the Tenth Circuit. According to the Tenth Circuit, an "account" is narrowly defined as "a formal record of debits and credits." *McNutt*, 908 F.3d at 563. Thus, a device does not meet the Tenth Circuit's "account access" requirement unless it debits a legitimate customer account. That circuit has held that tumbling cellular telephones and satellite television descramblers are not access devices, because they involve free-riding on existing networks, rather than debiting legitimate customer accounts. *Brady*, 13 F.3d 334 (tumbling cellular telephones); *McNutt*, 908 F.2d 561 (satellite television descramblers). These restrictions are inconsistent with Third Circuit jurisprudence, the legislative history, and the plain meaning of the statute.

While the Ninth Circuit in *United States v. Bailey*, 41 F.3d 413 (9th Cir. 1994), agreed that Section 1029 imposed an "account access" requirement, it used definitions of "account" and "account access" for its analysis that are more consistent with the plain meaning of the statute. First, the Ninth Circuit defined an "account" more broadly as any "contractual relationship that makes possible the provision of goods, services, or money based on payment, or the expectation of payment." *Bailey*, 41 F.3d at 417. Second, in describing the "necessary element[s] of 'account access' under § 1029," the court in *Bailey* stated that, "it matters only that the user of the access device be able to obtain goods or services from which he would otherwise be excluded." *Id.* at

5

417-18. The Ninth Circuit rejected the notion that one must prove a "direct accounting loss" to establish account access, holding that tumbling cellular phones were access devices, contrary to the Tenth Circuit's decision in *Brady*. *Bailey*, 41 F.3d at 418-19. *See also United States v. Nguyen*, 81 F.3d 912, 914-15 (9th Cir. 1996) (holding that blank credit cards not linked to any customer account are access devices).

The counterfeit TransPasses at issue readily satisfy the account access requirement outlined in *Bailey*. At the end of each month, Cooper allegedly purchased one legitimate TransPass, establishing a contractual relationship with SEPTA for transportation services. The unique electronic serial number on the pass and its duplicates constituted an account that entitled the pass-holder to specified services for a limited time. The counterfeit duplicates were access devices, because they provided access to the transportation services intended for the original accountholder. Therefore, the Court would deny Defendant's Motion to Dismiss even if an account access requirement existed.

### III.   CONCLUSION

For the foregoing reasons, Defendant's motion is denied. An Order consistent with this Memorandum will be docketed separately.